IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERICKA HARRIS | * |
| 2749 Claybrooke Drive | |
| Windsor Mill, MD 21244 | * |
| Baltimore, MD | |
| | *     Civil No. |
| v. | |
| | * |
| DRIFTWOOD, INC. | * |
| Trading as NORTHWEST HONDA | |
| 9700 Reisterstown Road | * |
| Owings Mills, MD  21117 | |
| | * |
| **SERVE:** | |
| Edward Dreiband, Resident Agent | * |
| Honda City Honda | |
| 5810 Ritchie Highway | * |
| Baltimore, MD  21225 | |
| | * |
| Defendant | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Ericka Harris, by counsel, Alan J. Hoff, Tammy Cohen, and SellmanHoff, LLC, herein files this Complaint against Defendant, Driftwood, Inc. t/a Northwest Honda, and states:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as this case contains counts arising under the Constitution, laws and treaties of the United States and pursuant to 28 U.S.C. §1337(a) as such counts also arise under an Act of Congress regulating commerce, specifically the Fair Credit Reporting Act,  the Equal Credit Opportunity Act, and the Truth in Lending Act.

2.     This Court has subject matter jurisdiction of all other claims arising under state law pursuant to 28 U.S.C. §1367.

3.     Venue is proper with this Court pursuant to 28 U.S.C. §1391 as this Court is within a judicial district within which a substantial part of the events and actions giving rise to the subject claims occurred and the parties reside or have their principal place of business within this district.

**PARTIES**

4.     Plaintiff, Erika Harris ("Ms. Harris"), is an individual residing in Baltimore County, Maryland.

5.     Defendant, Driftwood, Inc. t/a Northwest Honda ("Northwest Honda"), is a Maryland corporation with its principal place of business in Baltimore County, Maryland. Northwest Honda is an automobile dealership engaged in the sale, service and repair of Honda automobiles.

**FACTS COMMON TO ALL COUNTS**

*The April 2011 Retail Sales Contract*

6.     In early April, 2011, Ms. Harris and Northwest Honda entered into a purchase contract, a retail sales agreement, and related agreements (collectively, the "April Sales Contract") pursuant to which Ms. Harris agreed to purchase from Northwest Honda, as "Creditor-Seller", a new 2011 Honda Accord Sedan (the "Vehicle").

7.     Prior to entering into the April Sales Contract, Ms. Harris completed an application to Northwest Honda to obtain financing for her purchase of the Vehicle. After reviewing the application, Northwest Honda advised Ms. Harris that she, individually, would

2

qualify for financing of her purchase of the Vehicle, and that she could take immediate delivery of the Vehicle, which was part of Northwest Honda's current inventory and on its lot.

8.      As she was signing the paperwork to purchase the Vehicle, and despite the fact that Northwest Honda had previously advised Ms. Harris that she qualified for financing, Northwest Honda then told Ms. Harris that she needed a co-signer to enable her to finance the purchase of the Vehicle and take delivery. Ms. Harris contacted her boyfriend, Kevin Bumbray, who agreed to co-sign the loan. She provided this information to Northwest Honda which told her that, with Mr. Bumbray as a co-signer, she would qualify for the financing and that she could take the car that day so long as she and Mr. Bumbray came back to take care of the paperwork.

9.      Ms. Harris then took delivery of the Vehicle and drove it away that very day.

10.     The following day, Ms. Harris and Mr. Bumbray went to Northwest Honda, and, based upon representations by Northwest Honda that Ms. Harris qualified for vehicle financing as long as Mr. Bumbray co-signed, the April Sales Contract was then fully signed.

11.     In connection with the April Sales Contract, Ms. Harris gave Northwest Honda a deposit of $2,000.00 (the "Deposit").   To date, that Deposit has never been returned and Northwest Honda has never even offered to return it.

12.     Northwest Honda failed to explain to Ms. Harris the Truth-in-Lending Disclosures contained in the April Sales Contract.  Northwest Honda also failed to explain to Ms. Harris the itemization of the amounts financed and included charges for a "Gap Contract" and an extended warranty, both of which Ms. Harris had previously advised Northwest Honda that she declined to purchase.

3

13.    The Retail Installment Sale Contract (the "RISC") that is part of the April Sales Contract stated that it was being assigned by Northwest Honda to Municipal Employees Credit Union ("MECU"). However, the RISC does not state that the sale of the Vehicle was in any way conditioned or contingent upon Northwest Honda being able to assign the contract to another lender.

14.    Although the April Sales Contract listed Northwest Honda as the "Creditor-Seller", Northwest Honda failed to explain to Ms. Harris that it was unwilling to finance the Vehicle sale. To the contrary, Northwest Honda led Ms. Harris to believe, consistent with the RISC, that the financing had been approved.

15.    As part of the April Sales Contract, Northwest Honda also had Ms. Harris execute a "Bailment Agreement for Vehicle Spot Delivery, Note and Security Agreement" (the "Spot Delivery Agreement"). Pursuant to the Spot Delivery Agreement, Northwest Honda agreed to deliver the Vehicle to Ms. Harris. The Spot Delivery Agreement is otherwise vague and unenforceable, and contrary to the terms of the RISC, contains a Note and Security Agreement, but then proceeds to be self-contradictory as it provides a security interest in the Vehicle to MECU. The Spot Delivery Agreement was never explained to Ms. Harris.

16.    Sometime after she took delivery of the Vehicle, Ms. Harris began receiving adverse action notices from creditors advising her that they were not able to approve her request for credit in connection with the Vehicle. Ms. Harris then contacted Northwest Honda about this and was told for the first time that they had not obtained financing. She was told that they were working on it and that there was no problem. When she had not yet received a payment book with payment instructions, Ms. Harris again contacted Northwest Honda and

was told the same thing and that she should be getting her payment book shortly. At no time did Northwest Honda provide Ms. Harris with a payment book or any other instructions for making payments on the Vehicle.

17.     Because the temporary registration tags on the Vehicle were set to expire in June 2011, Ms. Harris again called Northwest Honda to find out what she should do about the expiring tags. Northwest Honda told her to come in to the dealership and that it would provide her with permanent tags. Ms. Harris then took the Vehicle back in to Northwest Honda which put permanent tags on the Vehicle. At that visit, she again asked about a payment booklet. Northwest Honda told her that it was still trying to obtain financing for her, that a payment booklet would be sent soon, and that she would receive title to the Vehicle in about a week.

18.     Ms. Harris subsequently did in fact receive the Certificate of Title to the Vehicle. The title listed MECU as the lienholder.

19.     Throughout this time, Northwest Honda never told Ms. Harris that it was rescinding the April Sales Contract, never offered to refund the Deposit, and never requested that Ms. Harris return the Vehicle. Throughout this time, Northwest Honda never even requested a payment on the unpaid balance or provided Ms. Harris with payment instructions. To the contrary, Northwest Honda actually transferred ownership of the Vehicle to Ms. Harris.

*The July Wrongful Repossession*

20.     As the title is in her name, Ms. Harris is the owner of the Vehicle. Despite this, on July 11, 2011, without warning and out-of the-blue, Northwest Honda repossessed the Vehicle.

21.     At the time it repossessed the Vehicle, Ms. Harris was not in default as no car payments were due.

22.     When Ms. Harris learned what had happened to her Vehicle, she contacted Northwest Honda and asked why they had taken the car. Northwest Honda claimed that it had made a mistake and returned the Vehicle.

*The August 2011 Retail Sales Contract*

23.     After it had wrongfully repossessed and then returned the Vehicle, Northwest Honda subsequently called Ms. Harris and told her that she and Mr. Bumbray needed to come in and redo the paperwork to wrap up the financing. Ms. Harris went to Northwest Honda and discovered that the paperwork was similar to the April Sales Contract and included, among other things, another financing application, sales contract and RISC. Again, Northwest Honda was listed as the "Creditor-Seller". This time the RISC falsely indicated that Insight Credit Union was the assignee of the Northwest Honda loan as Insight has not agreed to provide financing to Northwest Honda or Ms. Harris. There was no indication in the paperwork that the sale was contingent or conditioned upon Northwest Honda being able to assign its loan to Insight or to any another lender.

24.     Ms. Harris questioned having to sign an entirely new sales contract and advised Northwest Honda that she was not going to sign any documents unless they were certain financing was approved for the Vehicle. Northwest Honda assured Mr. Harris that her financing had been approved and showed her a document that Northwest Honda claimed evidenced such approval. Based upon these representations, Ms. Harris signed the paperwork

(the "August Sales Contract"). Subsequently, both Ms. Harris and Mr. Bumbray went back to Northwest Honda so that Mr. Bumbray could also sign the August Sales Contract.

25. At the time Northwest Honda made such representations, it was fully aware that they were utterly false and a complete fabrication. Indeed, Northwest Honda's story was simply an out-and-out lie. Northwest Honda had not obtained financing from any third party lender, Northwest Honda was not willing to finance the Vehicle as it had agreed to in the contracts, nor did it need new paperwork. Rather, Northwest Honda's story was nothing more than a ruse to get a new sales contract so that Northwest Honda could, among other things (a) continue to try to get a third party to finance the Vehicle, this time just in the name of Mr. Bumbray, or (b) attempt to revive any rights it may have had against Ms. Harris so as to either justify a possible attempt to rescind the contract or to repossess the Vehicle.

26. Northwest Honda failed to advise Ms. Harris that the August Sales Contract contained a financing application only in Mr. Bumbray's name and that Ms. Harris was signing the August Sales Contract solely as the current "owner" of the Vehicle in order for Northwest Honda to attempt to obtain a security interest in the Vehicle.

27. In furtherance of its scheme to defraud and take advantage of Ms. Harris, Northwest Honda called Ms. Harris and requested that she return the original title to the Vehicle so that Northwest Honda could correct it by adding the correct name of the lienholder.

28. After she gave Northwest Honda the title so that it could be "corrected", Northwest Honda never gave Ms. Harris a new or corrected title to the Vehicle and only made such false representations to Ms. Harris so that it could obtain the original title. Indeed, after securing the original title, Northwest Honda called Ms. Harris and requested that she return the

Vehicle and that Northwest Honda would put her in a new car and start the process all over again. Ms. Harris refused.

29.     At no time after the execution of the August Sales Contract did Northwest Honda advise Ms. Harris that it was rescinding the Sales Contracts or offer to refund her Deposit. Despite repeated requests by Ms. Harris, at no time did Northwest Honda provide Ms. Harris with a payment book or payment instructions so that she could make payments on the Vehicle. At no time did Northwest Honda ever request that Ms. Harris make a loan payment.

*The October Wrongful Repossession*

30.     Puzzled by these events, Ms. Harris sought the advice of an attorney to try to understand what was going on and to understand what her rights were. The attorney she consulted had several discussions with Northwest Honda, asking that they refrain from contacting Ms. Harris while he attempted to sort through the paperwork and the facts, and indicating that he would get back to them once he did so. He further informed them that, in the interim, they had absolutely no right to repossess the Vehicle and informed them that any such actions would be wrongful.

31.     Notwithstanding this, on October 8, 2011, Northwest Honda repossessed the Vehicle in the middle of the night. Ms. Harris' work tools and equipment were in the Vehicle at the time. Northwest Honda has refused to return the work tools and equipment to Ms. Harris. Northwest Honda also gave no notice of the repossession, either before or after doing so, and it has never given an opportunity to cure or redeem nor has it offered to return to Ms. Harris the Vehicle, her tools, or her Deposit.

32.     At the time it repossessed the Vehicle, Ms. Harris was not in default as no car payments were due.

33.     The actions of Northwest Honda have caused Ms. Harris to experience emotional and physical harm in addition to the economic harm that has been caused. Beyond the stress associated with the repeated lies committed by Northwest Honda, the uncertainty regarding the status of the car, the effect on her credit record, the worrying and anticipation as to whether her Vehicle was safe or was being repossessed, the two thousand dollars that were never returned, the repeated phone calls and trips to the dealership, and the fact that the dealership has her car, Ms Harris has experienced stress and sleepless nights, and not a day goes by that she isn't worried about everything associated with the above-referenced events.

**Count I**
**Breach of Contract – the April Sales Contract**

34.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

35.     Ms. Harris and Northwest Honda entered into the April Sales Contract whereby Northwest agreed to sell and Ms. Harris agreed to buy the Vehicle, and Northwest agreed to provide financing for Ms. Harris. The April Sales Contract was not conditioned or contingent upon Northwest Honda being able to obtain a third party lender to whom Northwest Honda could assign the contract.

36.     Northwest Honda breached its contractual obligations by, among many things, failing to finance the Vehicle as it agreed to in the April Sales Contract, failing to provide Ms.

Harris with an opportunity to pay for the Vehicle, taking back the title, and repossessing the Vehicle.

37.     Ms. Harris suffered actual and substantial damages as a proximate result of Northwest Honda's breach of contract.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Fifty Thousand Dollars ($50,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count II
### Breach of Contract – the August Sales Contract

38.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

39.     Ms. Harris, as owner, and Northwest Honda entered into the August Sales Contract whereby Northwest agreed to provide financing for Ms. Harris' Vehicle and Ms. Harris would grant Northwest Honda a security interest in the Vehicle. The August Sales Contract was not conditioned or contingent upon Northwest Honda being able to obtain a third party lender to whom Northwest Honda could assign the contract.

40.     Northwest Honda breached its contractual obligations by, among many things, failing to finance the Vehicle as it agreed to in the April Sales Contract, failing to provide Ms. Harris with an opportunity to pay for the Vehicle, taking back the title, and repossessing the Vehicle.

41.     Ms. Harris suffered actual and substantial damages as a proximate result of Northwest Honda's breach of contract.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Fifty Thousand Dollars ($50,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count III
### Fraud and Fraudulent Inducement – The April Sales Contract

42.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

43.     The representations made in connection with the April Sales Contract by Northwest Honda to Ms. Harris that she had been approved for financing were inaccurate and false.

44.     The representations made by Northwest Honda in the April Sales Contract that it would provide financing upon the terms and conditions set forth in the April Sales Contract were inaccurate and false. Northwest Honda never intended to provide financing for the Vehicle.

45.     Northwest Honda perpetuated these lies, even after the April Sales Contract had been signed, to cover up the earlier lies and so that Ms. Harris would not return the car, as Northwest Honda would then have to reverse the transaction and would also have to then sell the Vehicle as a used car.

46.     Northwest Honda knew these representations were false when it made them, and yet Northwest Honda nevertheless intentionally made them to induce Ms. Harris to execute the April Sales Contract.

47.     Northwest Honda made the representations with the intention of having Ms. Harris rely upon them.

48.     The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, greed, ill will or fraud, as their omissions were knowingly and intentionally designed to mislead Ms. Harris and to benefit Northwest Honda at Ms. Harris' expense.

49.     Ms. Harris reasonably relied upon Northwest Honda's representations and statements, and was justified in her reliance.

50.     As a result of the intentional misrepresentations made by Northwest Honda, Ms. Harris incurred actual and substantial damages.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) and punitive damages of Two Million Dollars ($2,000,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count IV
### Fraud and Fraudulent Inducement – The August Sales Contract

51.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

52.     The representations made in connection with the August Sales Contract by Northwest Honda to Ms. Harris – that Mr. Bumbray had been approved for financing and that the paperwork needed to be re-signed were inaccurate and false.

53.     The representations made by Northwest Honda in the August Sales Contract - that it would provide financing upon the terms and conditions set forth in the August Sales Contract were inaccurate and false.  Northwest Honda never intended to provide financing for the Vehicle.

54.     Northwest Honda created and perpetuated these lies, even after the August Sales Contract had been signed, to cover up the earlier lies, to have new paperwork and so that a third party assignee could again be sought.

55.     Northwest Honda knew these representations were false when it made them, and yet Northwest Honda nevertheless intentionally made them to induce the August Sales Contract and to induce Ms. Harris to thereafter turn over the title.

56.     Northwest Honda made the representations with the intention of having Ms. Harris rely upon them.

57.     The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, greed, ill will or fraud, as their omissions were knowingly and intentionally designed to mislead Ms. Harris and to benefit Northwest Honda at Ms. Harris' expense.

58.     Ms. Harris reasonably relied upon Northwest Honda's representations and statements, and was justified in her reliance.

59.     As a result of the intentional misrepresentations made by Northwest Honda, Ms. Harris incurred actual and substantial damages.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00) and punitive damages of Two Million Five Hundred Thousand Dollars ($2,500,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count V
### Negligent Misrepresentation – the April Sales Contract

60.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

61.     Northwest Honda owed a duty of care to Ms. Harris. This duty required the transmittal of accurate information from Northwest Honda to Ms. Harris in connection with the April Sales Contract.

62.     The representations made by Northwest Honda to Ms. Harris that she had qualified for financing were false and inaccurate. The representations made by Northwest Honda to Ms. Harris that it would finance the Vehicle purchase were false and inaccurate

63.     Northwest Honda was negligent in the assertion of the false statements, as it knew or should have known that it had not obtained financing for Ms. Harris from a third party lender and that it would not finance the Vehicle.

64.     Ms. Harris reasonably relied upon and acted upon Northwest Honda's representations and statements, and was justified in her reliance.

65.     As a result of the negligent misrepresentations made by Northwest Honda, Ms. Harris incurred actual and substantial damages.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Fifty Thousand Dollars ($50,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count VI
### Negligent Misrepresentation – the August Sales Contract

66.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

67.     Northwest Honda owed a duty of care to Ms. Harris.  This duty required the transmittal of accurate information from Northwest Honda to Ms. Harris in connection with the August Sales Contract.

68.     The representations made by Northwest Honda in connection with the August Sales Contract to Ms. Harris that – Mr. Bumbray had been approved for financing and that the paperwork need to be re-signed were false and inaccurate.

69.     The representations made by Northwest Honda in the August Sales Contract - that it would provide financing upon the terms and conditions set forth in the August Sales Contract were false and inaccurate.  Northwest Honda never intended to provide financing for the Vehicle.

70.     Northwest Honda was negligent in the assertion of the false statements, as it knew that it had not obtained third party financing, that it was not willing to finance the Vehicle, and that paperwork did not need to be re-signed.

71.     Ms. Harris reasonably relied upon and acted upon Northwest Honda's representations and statements, and was justified in her reliance.

72.     As a result of the negligent misrepresentations made by Northwest Honda, Ms. Harris incurred actual and substantial damages.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Fifty Thousand Dollars ($50,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count VII
### Trover and Conversion – Wrongful Repossession (the July Repossession)

73.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

74.     Once Northwest Honda titled the Vehicle in Ms. Harris' name, she became the owner of the Vehicle and was entitled to possession of it.

75.     At the time it repossessed the Vehicle, Ms. Harris was not in default and no car payments were due.

76.     Northwest Honda did not have the right to repossess the Vehicle.

77.     Northwest Honda wrongfully repossessed the Vehicle in July, and wrongfully took control and dominion over the Vehicle.

78.     The acts of Northwest Honda were intentional, without Ms. Harris' permission or agreement, and without justification.

79.     The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

80.     As a result of the intentional acts by Northwest Honda, Ms. Harris incurred actual and substantial damages.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of One Hundred Thousand dollars ($100,000.00) and punitive damages of One Million Dollars ($1,000,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count VIII
### Trover and Conversion – Wrongful Repossession (the October Repossession)

81.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

82.     Once Northwest Honda titled the Vehicle in Ms. Harris' name, she became the owner of the Vehicle and was entitled to possession of it.

83.     Northwest Honda did not have the right to repossess the Vehicle.

84.     At the time it repossessed the Vehicle, Ms. Harris was not in default and no car payments were due.

85.     Northwest Honda wrongfully repossessed the Vehicle in October, and wrongfully took control and dominion over the Vehicle owned by Ms. Harris and her work tools and equipment that were in the Vehicle.

86.     The acts of Northwest Honda were intentional, without Ms. Harris' permission or agreement, and without justification.

87.     The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

88.     As a result of the intentional acts by Northwest, Ms. Harris incurred actual and substantial damages.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Four Hundred Thousand Dollars ($400,000.00) and punitive damages of Four Million Dollars ($4,000,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count IX
### Violation of Maryland Consumer Protection Act/False and Deceptive Trade Practices

89.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

90.     Northwest Honda is in the business of selling consumer goods and services.

91.     Northwest Honda sold the Vehicle to Ms. Harris.

92.     The Vehicle is a consumer good which Ms. Harris purchased for her personal and family use.

93.     In connection with the sale of the Vehicle to Ms. Harris, Northwest Honda engaged in unfair and deceptive trade practices including but not limited to the following: (1) falsely and misleadingly inducing Ms. Harris to sign the April Sales Contract for the reasons set forth previously; (2) falsely and misleadingly inducing the August Sales Contract for the

18

reasons discussed previously; (3) making the false representations discussed previously with the intent that Ms. Harris rely upon such representations, and (4) withholding material facts from her.

94.     Northwest Honda's actions are in violation of the Maryland Consumer Protection Act, Md. Code Ann. (Commercial Law) §13-101, et. seq.

WHEREFORE,   Ericka Harris respectfully request that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count X
## Violation of Maryland Consumer Debt Collection Act

95.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

96.     The purchase of the Vehicle by Ms. Harris from Northwest Honda is a consumer transaction as Mr. Harris purchased the Vehicle for her person and family use.

97.     Northwest Honda repossessed the Vehicle in an attempt to collect a debt to it arising out of a consumer transaction.

98.     Northwest Honda's repossession was wrongful as, among many things, (1) it did not own title to the Vehicle; (2) it did not have a security interest in the Vehicle, (3) it had no legal right to repossess the Vehicle, (4) it failed to provide Ms. Harris with any instructions or opportunity to make the payments provided for in either the April Sales Contract or the August Sales Contract or even demand payment, and/or (5) the repossession violated Maryland law in

many respects and Northwest Honda failed to give the notices required by law. Northwest Honda knew or should have known that it did not have the right to repossess the Vehicle.

99.     The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

100.     Northwest Honda's actions are in violation of the Maryland Consumer Debt Collection Act, Md. Code Ann. (Commercial Law) §14-201, et. seq.

101.     Ms. Harris suffered actual and substantial damages as a result of the acts of Northwest Honda.

WHEREFORE, Ericka Harris respectfully request that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count XI
### Violation of the Maryland Retail Installment Sales Act

102.     Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

103.     The April Sales Contract and the August Sales Contract include retail installment sales agreements under the Maryland Retail Installment Sales Act.

104.     Northwest Honda's repossession was wrongful as, among many things, (1) it did not own title to the Vehicle; (2) it did not have a security interest in the Vehicle, (3) it had no legal right to repossess the Vehicle, and/or (4) it failed to provide Ms. Harris with any

instructions or opportunity to make the payments provided for in either the April Sales Contract or the August Sales Contract or even demand payment. The repossession was also wrongful as no notices or opportunities to cure were given and, after repossession, Northwest Honda failed to give Ms. Harris any notice of her rights of redemption

105.    The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

106.    Northwest Honda's actions are in violation of the Maryland Retail Installment Sales Act, Md. Code Ann. (Commercial Law) §12-601.

107.    Ms. Harris suffered actual and substantial damages as a result of the acts of Northwest Honda.

WHEREFORE, Ericka Harris respectfully request that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count XII
### Negligent Violation of Federal Fair Credit Reporting Act

108.    Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

109.    The transactions between Ms. Harris and Northwest Honda were consumer transactions as Ms. Harris purchased the Vehicle for her personal and family use.

110.    Northwest Honda is a creditor of Ms. Harris in connection with the April Sales Contract and the August Sales Contract, both of which were financing agreements with Northwest Honda as the "Creditor-Seller".

111.    Northwest Honda obtained and used Ms. Harris' credit report in connection with her financing of the Vehicle.

112.    In connection with the April Sales Contract, Northwest Honda denied and/or revoked credit to Ms. Harris and Northwest Honda refused to grant Ms. Harris credit on, or substantially on, the terms agreed to in the April Sales Contract.  Northwest Honda's actions were based, in whole or in part, upon the credit reports and/or information from third parties to whom Northwest Honda sought to assign the contract but who rejected the financing.  Such action was an adverse action under the Fair Credit Reporting Act.

113.    Without providing an adverse action notice, Northwest Honda then entered into the August Sales Contract.  Northwest Honda then denied and/or revoked credit to Ms. Harris and Northwest Honda refused to grant Ms. Harris credit on, or substantially on, the terms agreed to in the August Sales Contract.  Northwest Honda's actions were based, in whole or in part, upon the credit reports and/or information from third parties to whom Northwest Honda sought to assign the contract but who rejected the financing.  Such action was an adverse action under the Fair Credit Reporting Act.

114.    Northwest Honda then wrongfully repossessed the Vehicle based, in whole or part, upon such credit reports and/or information obtained from third party lenders who had also rejected Ms. Harris' request for financing.  Such actions were adverse actions under the Fair Credit Reporting Act.

115.    Northwest Honda failed to provide Ms. Harris with an adverse action notice in connection with its determinations and actions.

116.    Moreover, after the execution of the April Sales Contract, Northwest Honda continued to access Ms. Harris' credit report or cause the access of the credit report to other lenders. Since the April Sales Contract was a binding finance agreement, Northwest Honda had no right to continue to  access or cause other parties to access Ms. Harris' credit report.

117.    Northwest Honda's actions are in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681, et. seq.

118.    Northwest Honda failed to exercise reasonable care in connection with its compliance with the Fair Credit Reporting Act.

119.    Ms. Harris suffered actual and substantial damages as a result of the acts of Northwest Honda.

WHEREFORE, Ericka Harris respectfully requests that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

### Count XIII
### Willful Violation of Federal Fair Credit Reporting Act

120.    Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

121.    The transactions between Ms. Harris and Northwest Honda were consumer transactions as Ms. Harris purchased the Vehicle for her personal and family use.

122.    Northwest Honda is a creditor of Ms. Harris in connection with the April Sales Contract and the August Sales Contract, both of which were financing agreements with Northwest Honda as the "Creditor-Seller".

123.    Northwest Honda obtained and used Ms. Harris' credit report in connection with her financing of the Vehicle.

124.    In connection with the April Sales Contract, Northwest Honda denied and/or revoked credit to Ms. Harris and Northwest Honda refused to grant Ms. Harris credit on, or substantially on, the terms agreed to in the April Sales Contract. Northwest Honda's actions were based, in whole or in part, upon the credit reports and/or information from third parties to whom Northwest Honda sought to assign the contract but who rejected the financing. Such action was an adverse action under the Fair Credit Reporting Act.

125.    Without providing an adverse action notice, Northwest Honda then entered into the August Sales Contract. Northwest Honda then denied and/or revoked credit to Ms. Harris and Northwest Honda refused to grant Ms. Harris credit on, or substantially on, the terms agreed to in the August Sales Contract. Northwest Honda's actions were based, in whole or in part, upon the credit reports and/or information from third parties to whom Northwest Honda sought to assign the contract but who rejected the financing. Such action was an adverse action under the Fair Credit Reporting Act.

126.    Northwest Honda then wrongfully repossessed the Vehicle based, in whole or part, upon such credit reports and/or information obtained from third party lenders who had also rejected Ms. Harris' request for financing. Such actions were adverse actions under the Fair Credit Reporting Act.

127.   Northwest Honda failed to provide Ms. Harris with an adverse action notice in connection with its determinations and actions.

128.   Moreover, after the execution of the April Sales Contract, Northwest Honda continued to access Ms. Harris' credit report or cause the access of the credit report to other lenders. Since the April Sales Contract was a binding finance agreement, Northwest Honda had no right to continue to access or cause other parties to access Ms. Harris' credit report.

129.   Northwest Honda's actions are in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681, et. seq.

130.   The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

131.   Northwest Honda either knew or should have known that its actions violated the Fair Credit Reporting Act.   Northwest Honda either knowingly or with reckless disregard violated the Fair Credit Reporting Act.

132.   Ms. Harris suffered actual and substantial damages as a result of the acts of Northwest Honda.

WHEREFORE, Ericka Harris respectfully request that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00) and punitive damages in the amount of Two Million Dollars ($2,000,000.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count XIV
### Violation of Federal Equal Credit Opportunity Act

133.    Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

134.    The transactions between Ms. Harris and Northwest Honda were consumer transactions as Ms. Harris purchased the Vehicle for her personal and family use.

135.    Under the Equal Credit Opportunity Act, Northwest Honda is a creditor of Ms. Harris in connection with the April Sales Contract and the August Sales Contract.  Northwest Honda was the "Creditor-Seller" under the contracts.  In addition, Northwest Honda regularly extends credit to its customers, participates in credit decisions of its customers and arranges for the extension, renewal, or continuation of credit to its customers.  Northwest Honda extended credit to Ms. Harris, attempted to arrange for third party assignment of the contracts and participated in the credit decision regarding Ms. Harris.

136.    Northwest Honda entered into the April Sales Contract, which was a binding financing agreement with Ms. Harris.  Northwest Honda agreed to extend credit to her upon the terms in the financing agreement. Northwest Honda then denied and/or revoked credit to Ms. Harris and Northwest Honda refused to grant Ms. Harris credit on, or substantially on, the terms agreed to in the April Sales Contract.  Such action was an adverse action under the Equal Credit Opportunity Act.

137.    Without providing Ms. Harris with an adverse action notice, Northwest Honda entered into the August Sales Contract, which was a binding financing agreement with Ms. Harris.  Northwest Honda agreed to extend credit to her upon the terms in the financing

agreement. Northwest Honda then denied and/or revoked credit to Ms. Harris and Northwest Honda refused to grant Ms. Harris credit on, or substantially on, the terms agreed to in the August Sales Contract. Such action was an adverse action under the Equal Credit Opportunity Act.

138. In addition, Northwest Honda wrongfully repossessed the Vehicle which was also an adverse action under the Equal Credit Opportunity Act.

139. Northwest Honda failed to provide Ms. Harris with an adverse action notice in connection with its determinations to not extend credit and in connection with its refusal to perform under the Contracts and in connection with its repossession of the Vehicle.

140. The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

141. Northwest Honda's actions are in violation of the Equal Credit Opportunity Act 15 U.S.C. §1691.

142. Ms. Harris suffered actual and substantial damages as a result of the acts of Northwest Honda.

WHEREFORE, Ericka Harris respectfully request that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00) and punitive damages in the amount of Ten Thousand Dollars ($10,000.00) or such other amount as authorized by statute, together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## Count XV
## Violation of Truth In Lending Act (Regulation Z)

143.    Plaintiff hereby repeats, realleges and incorporates by reference the allegations made in paragraphs 1-33.

144.    The transactions between Ms. Harris and Northwest Honda were consumer transactions as Ms. Harris purchased the Vehicle for her personal and family use.

145.    Northwest Honda is a creditor of Ms. Harris in connection with the April Sales Contract and the August Sales Contract. Northwest Honda was the "Creditor-Seller" under the contracts.

146.    At the time Northwest Honda entered into the contracts, it never intended to finance the Vehicle or to be the creditor under the contracts. Northwest Honda failed to disclose the identity of the creditor whom Northwest Honda intended to finance the Vehicle purchase and, in fact, inaccurately listed assignees of the contracts whom had refused to extend financing.

147.    Moreover, if Northwest Honda intended that the contracts be contingent upon third party financing other than Northwest Honda, then the disclosure of the identity of the creditor and the disclosures of the financing charges should have been identified as estimates.

148.    Northwest Honda's actions are in violation of the Truth in Lending Act, 15 U.S.C. §1601, et.seq. and Regulation Z, 12 CFR §226.1, et.seq., particularly the disclosure requirements of §1638 and 12 CFR §226.17 and §226.18.

149.    The actions of Northwest Honda were committed with actual malice, characterized by evil motive, intent to injure, ill will, greed or fraud.

150.    Northwest Honda either knew or should have known that its actions violated the Truth in Lending Act. Northwest Honda either knowingly or with reckless disregard violated the Truth in Lending Act.

WHEREFORE, Ericka Harris respectfully request that a judgment be entered in her favor against Northwest Honda for compensatory damages in the amount of Four Hundred Thousand Dollars ($400,000.00) or such other amount as may authorized by statute and punitive damages of Two Million Dollars ($2,000,00.00), together with pre-judgment interest, post-judgment interest, attorneys' fees, and court costs.

## DEMAND FOR JURY TRIAL

Plaintiff requests a Jury Trial in this matter on all Counts and claims.

Alan J. Hoff, Bar No. 03251
Tammy Cohen, Bar No. 09085
Sellman Hoff, LLC
201 N. Charles Street
Suite 1331
Baltimore, Maryland 21201
(410) 332-4151

Attorneys for Plaintiff